# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| JACKSON WELLS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:17-CV-4066-DGK-SSA ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## ORDER REMANDING CASE TO COMMISSIONER FOR FURTHER PROCEEDINGS

This action seeks judicial review of the Acting Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff Jackson Wells' application for Supplemental Security Income under Title XVI of the Act ("the Act"), 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had severe impairments of schizoaffective disorder and anxiety disorder, but retained the residual functional capacity to perform work as a laborer, automobile detailer, or dishwasher.

After carefully reviewing the record, the Court holds the ALJ's findings concerning Listing 12.03 are not supported by the record. The Court REMANDS this case to the Commissioner for further proceedings consistent with this opinion.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed his application on September 2, 2014, alleging a disability onset date of December 31, 2010. He subsequently amended the alleged onset date to September 4, 2014.

The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing, and on March 16, 2016, issued her decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on March 20, 2017, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). Substantial evidence is less than a preponderance, enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

## Discussion

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing

medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). Plaintiff argues the ALJ erred at Step Three by failing to find that he met Listing 12.03C and at Step Four in failing to evaluate properly the opinion of his treating psychiatrist.

**I.      The ALJ's findings concerning Listing 12.03 are not supported by the record.**

The ALJ found that Plaintiff did not meet Listing 12.03C[2] for schizophrenic, paranoid and other psychotic disorders. Plaintiff's eligibility is determined by whether his illness met or equaled the Listing as of the date of the ALJ's decision, March 16, 2016. On that date, for a claimant to qualify under Listing 12.03C, the claimant was required to show:

> Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
> 1.   Repeated episodes of decompensation, each of extended duration; or
>
> 2.   A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3.   Current history of 1 or more years' inability to function outside of a highly supportive living arrangement, with an indication of continued need for such an arrangement.

---

that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

[2] The listings are sets of diagnostic criteria, which if met, will halt the sequential evaluation with a finding of disability at step three of the sequential evaluation process. 20 C.F.R § 416.920(a)(4)(iii). The claimant bears the burden of showing she meets each of the specific criteria in the listed impairment. *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). "[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). The medical criteria for listed impairments were intentionally set high because they end the inquiry relatively early in the sequential evaluation process. *Id.*

20 C.F.R. Pt. 404 Subpt. P, App. 1, § 12.03C.

Plaintiff contends he met subsection 3's requirements. The ALJ found he did not, writing:

> The undersigned notes the claimant's representative argued the claimant meets the criteria of Listings 12.03C2 and 12.03C3. However, the record, as discussed below does not support that a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate. *The record reflects multiple significant situations where the claimant had an increase in demands or change in his environment, including performing on a stage, changing college classes, and moving out of his mother's house and did not decompensate*. Additionally, there is a question as to whether the claimant living at home with his mother while he attended college would constitute a highly supportive living arrangement but, more importantly, *the record clearly reflects that the claimant was able to function outside his living arrangement, including performing, taking college courses, and moving out of his mother's house for a period*.

R. at 15 (italics added).

The record does not support the ALJ's findings. In fact, it shows that beginning several years before the relevant period and extending into it, almost anytime the claimant faced significant demands in his environment akin to the demands of maintaining full-time employment, he decompensated. For example, in December of 2010, at the end of his first semester in college when he was no longer living at home, Plaintiff sought treatment for auditory hallucinations and suicidal ideation. R. at 300, 303, 308. The negative voices in his head resulted in such self-hatred that he actually punched himself. R. at 300. After being given a comprehensive psychiatric evaluation, a psychiatrist diagnosed him with classic paranoid schizophrenia. R. at 292.

As far as "changing college classes," the record shows he was not changing classes, he was *withdrawing* from them because his mental health was such that he could almost never maintain a full caseload. Over a three-year period, he withdrew from eighteen classes, R. at 219-221, even after his college gave him generous ADA accommodations providing substantial leniency in

4

attending classes. R. at 237. And, as one of his music performance professors noted, "Without the attendance accommodations Jackson would have failed every semester." R. at 246.

Finally, the record shows he has never been able to successfully move out of his mother's house. Although he tried on several occasions, living in a single dorm room or in an apartment with roommates for a period of months, each attempt ultimately failed. Although the reasons differed—on one occasion his inability to care for his own hygiene and paranoia was the problem, on another his illness would cause him to lean so heavily on his roommates for support that he alienated them—the result was always the same. R. at 43-44. This despite the fact that his mother was still closely monitoring him, calling him to remind him to attend class and take his medication, and dropping by his apartment to observe his hygiene and pressure him to take a shower. R. at 223. These facts are irreconcilable with the ALJ's decision.[3]

The ALJ's opinion is also inconsistent with the record in that it does not sufficiently appreciate Plaintiff's inability to function independently, outside of his mother's home. The regulations state:

> Particularly in cases involving chronic mental disorders, overt symptomatology may be controlled or attenuated by psychosocial factors such as placement in a hospital, halfway house, board and care facility, or other environment that provides similar structure. Highly structured and supportive settings may also be found in your home. Such settings may greatly reduce the mental demands placed on you. . . . If your symptomatology is controlled or attenuated by psychosocial factors, we must consider your ability to function outside of such highly structured settings.

---

[3] Granted, Plaintiff was able to perform with a college singing group on occasion. The ALJ's decision, however, exaggerates the significant of this. These performances are not evidence that he can function meaningfully outside of his living arraignment.

20 C.F.R. § pt. 404, subpt. P, app. 1. Although *Nowling v. Colvin*, 813 F.3d 1110 (8th Cir. 2016), is not analogous, it is instructive. Here, as in *Nowling*, the ALJ failed to fully credit the extent to which Plaintiff's symptoms "waxed and waned" and were "unpredictable and sporadic," as well as the effect on Plaintiff of living in the structured, closely monitored setting of his mother's home. *See id.* at 1121-23.

Because the Court's holding concerning Plaintiff's first argument is dispositive, the Court will not consider Plaintiff's second argument.

## Conclusion

For the reasons discussed above, the Court REMANDS this case to the Commissioner for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Date:   May 23, 2018                            /s/ Greg Kays
                                                GREG KAYS, CHIEF JUDGE
                                                UNITED STATES DISTRICT COURT